Madam Clerk, please call the last case of the day. Clause 15, Senate Bill 15, John Ortiz v. Arbrock v. Petters May it please the Court, Counsel, my name is John Popelka, I'm here on behalf of the appellant, John Ortiz. This case was originally tried before Arbitrator Flores under Section 19B of the Act. The issues that were in dispute at the time that the trial began were causation, temporary total disability benefits, an overpayment of TTD benefits, medical bills, prospect of medical care, and penalties and fees. At the close of the cross-examination by the respondent of the petitioner, the respondent made a motion to amend the stipulation sheet to place accident into dispute. The arbitrator ultimately accident began notice. The arbitrator ultimately allowed accident to be placed into dispute at that point, although it denied the motion as to notice. The decision then was rendered by the arbitrator, and the reason why accident was brought into dispute at that time was based on the petitioner's testimony regarding his low back. He had testified that he had never had any prior back problems. So accident was put into dispute based on the low back condition that the petitioner had. So when the arbitration decision came out, the finding specifically with respect to accident was that there was no accident that involved the low back. There's no evidence in the emergency room records, the initial treatment. He didn't testify he hurt his low back. But the problem is that what accompanied that finding were several findings on the issue of credibility. The arbitrator found that the petitioner was not a credible witness and actually even found that his treating physician was not credible. In large part, I believe, based on the fact that they allowed this issue to be placed into dispute. It is our position. I don't know. What accident was placed into dispute? It was undisputed the guy had a work-related accident. Well, that's correct. He had an undisputed work accident. Yes. And he stood up. He was working in a steel mill in Middle Steel in Indiana. He stood up, and there was a pipe sticking a foot out of the wall four or five feet up. He hit the back of his head. Well, he hit his upper back, his neck on this pipe. Right. Right. So during the course of his medical care, in June, he notified the doctor that in therapy they did something that hurt his low back. And so he treated for his low back for a short period of time. So you're correct. That's a causation issue. Whether the low back condition is related to this case is an issue of causation. It is not an issue of accident. Exactly right. That's why I couldn't understand why you were arguing accident. Well, because accident is ultimately so. We believe that the arbitrator's error in allowing accident to be placed into dispute was an error as a matter of law that mandates a de novo review. Yeah, but you won the issue of accident because everyone said he had an undisputed accident. We lost on the issue of accident relative to the low back. No, you lost on causation relative to the low back. That's what you lost on. But that's not what the decision says. I don't disagree with you. Here, I don't care how they use the language. There is no issue of accident in this case. It simply doesn't exist. Whether they found it or they didn't find it, you won it. They found that he had an accident, and it's virtually undisputed. The next issue becomes is there a causal connection between his low back and the accident which he suffered at work, yes or no? And that becomes a manifest weight standard. That issue does. That's not what my claim of error is. My claim of error is that the arbitrator allowed the respondent to amend the stipulation sheet at the end of their cross-examination of the petitioner to put accident into dispute. This court's decision in the Gracia Interior Elements says the stipulation sheet is binding upon the parties. Counsel, I would agree with you a thousand percent if they had found no accident, and then you turn around and say, wait a minute, you amended the stipulation, you took me by surprise, you agreed to accident, and now you don't. But you won it. It's over with. There is an accident. Talk about causal connection for us. Yes, please. I want to try to make sure I understand your argument. Whether you call it accident or causal connection, what you're saying is he didn't, you agree he did not injure his low back on the day of the accident. That's correct. That happened in physical therapy. Yes. But the commission denied coverage, causation, accident, whatever, to the low back because things like the emergency room records had no reference to low back. And you would say, of course they didn't. He didn't hurt his low back until later in physical therapy. Is that? That's somewhat, but there's one element that's missing that I think you're getting wrong, Justice Huffman, with all due respect. They did make a finding of no accident relative to the low back. They allowed accident. I know what they said, counsel, but that's not what they did. They can evidently, whoever wrote this for them, doesn't know the difference between causation and accident. So he had the accident. The question is, is the injury to the low back causally connected to that accident? You want to tell us that, yes, it is because it happened during therapy, therapy that was required because of the injury that he received at the time of the accident. That's a causation issue. It's not an accident issue. I agree with you, but that was my argument before the arbitrator. So I'm not interested. You're going to waste your entire time addressing the manifest weight issue vis-à-vis causation because that is your issue. No, I hope I don't do that, Your Honor. I don't plan to do that. I'm going to follow up exactly on what you said. It is a causation issue. There was not a finding that the low back was not causally related. That is not contained in the commission decision. The only testimony about the low back is Dr. Gaurishan, and Dr. Gaurishan said the low back was related. Okay, so that's the issue of causation as it relates to the low back. Why am I harping on the accident issue? Because in the commission finding, in the commission decision, finding no accident, and they specifically, there's a section that says accident and a finding of no accident. The reason I'm taking issue is because they make credibility findings about the petitioner in the accident section. They make findings that he's not credible because there were no complaints early on, because he didn't talk to his doctor about it. What I'm saying is, by allowing accident Can I read something to you? Just get into that. No, I'm going to read this to you. Yes. This is the commission's decision. The parties dispute whether the petitioner's claimed low back condition and neck condition are causally related to the accident at work on April the 23rd, 2012. As explained in the accident analysis above, the arbitrator finds that the petitioner failed to establish that he sustained a compensable low back injury at work, and the petitioner's testimony is not credible, and further finds that the petitioner's claimed continued cervical spine condition is not causally related to the work accident on April the 23rd. It sounds to me like the arbitrator understands the difference between accident and causation. Even though it wasn't articulated clearly. Yeah, there's something in this accident section also. I don't dispute that. But the fact of the matter is, whether you call a grape an orange or you call it a grape, it's still a grape. So they may have talked about this as accident, but clearly this was decided in the context of causation. I just don't see any other way to view it. The credibility findings that are used in the causation section come from the accident section reasoning. The only reason why the claimant was not found to be credible was based on the arbitrator's arguments that there was no compensable accident to the low back because of the reasons we've gone into. I won't go into them again. Those credibility findings would not have occurred had the arbitrator not allowed the accident to be placed into dispute at the end of the cross-examination of the petitioner. So before you, what I'm saying is what this commission should do, or what the court should do is throw out the commission decision. Why? Because there should be a de novo review. Why? Because there's an issue of pure law that's involved here. And that issue of pure law is they should not, the arbitrator should not have allowed the stipulation sheet to have been changed because once it was submitted, it was binding on the parties. Well, what about if something unexpected comes up, though? Can there be a change? That's a legitimate question. But there isn't here. Here's the lead up to what led to the accident being put into dispute. The exchange on cross-examination. You know the history of low backing, is that correct? No, I don't. So prior to negatively low backing therapy, you answer, I have never had low back. I have never had lower back problems. Immediately followed by counsel saying to the arbitrator, Your Honor, at this point in time, I would like to amend the stip sheet to dispute accident and dispute notice because it was my understanding that Mr. Ortiz had a history of low back pain. But there is no history of low back pain. He testified he didn't have it. But beyond that, they brought in three witnesses. None of their witnesses testified there was a history of low back pain. They introduced medical evidence. None of the medical evidence supports any finding or documents any prior low back complaints. The owner of the company came in. My client worked there seven years. He never testified about any complaints of low back pain. So if you go back to that point in time in the case and this motion to amend the stip sheet to include accident is denied, you don't have a decision where the claimant is found not credible because he didn't report injuring his low back at the time of the injury. Okay. I see your point there. Was that the only basis that the commission found the claimant was not credible? Didn't they also find him to be not credible because of their assessment of the surveillance video? Well, there was a surveillance video. And he was in all this pain. They said he got out of the car and walking with any type of motion. No motion. A completely flat affect. And they interpret that as being somebody who obviously wasn't in pain. Is that the standard for whether somebody's in pain or not? Here's my response to that. He's a 6'2", about 210 pound, Hispanic male who had just left his I.E. leave and he's back in his neighborhood. Should he be acting injured as he's walking out in a public area, walking into a 7-Eleven store, and you can see in the video with other people milling about? I don't think that would be a good idea. He's using his common sense. But there was nothing. He wasn't at arbitration. He had a flat affect. He's a gentleman who's got a completely flat affect. I don't think it shows anything. But would that be enough to say that he's not credible? That video was 15 seconds, a minute, of him walking out of the car. Let's look at the other credibility findings. I think it is important to look at them. The arbitrator commission said that they relied in part on the records of Dr. Plunkett. Dr. Plunkett didn't see this petitioner. Dr. Plunkett wasn't one of the treating physicians, hadn't seen the petitioner. Dr. Plunkett wasn't available when the petitioner went to his office and he saw somebody else. There were no records from Dr. Plunkett. Let's assume you're correct. Who's Dr. Gerson? Gerson is the treater. The treating? Yes, he's the treater. Okay. And did he say that the claimant's low back pain was not related to the accident? No, he did not. He did not say that? He testified that it wasn't caused by the accident. He said it arose at physical therapy. He testified in his evidence deposition that on June 16th of 2012, the petitioner first complained to him of low back pain that began in physical therapy, and then at the next appointment on July 10th of 2012, he told him that his pain was increasing while lifting weights at physical therapy. So the only thing Gerson can testify to is what the complainant told him. Well, there's a chain of events analysis. But did he ever render an opinion that it actually happened that way? He said whether he would believe him. Did he say, I believe that it happened? No. Did he say, I have an opinion that the injury to his low back is causally related to something that occurred at physical therapy? Your Honor, I should know that citation, and I can't tell you if it's there or not. I did not check that. I understand that he's relating what the complainant told him. I know he's relating what the claimant told him. But we have a problem here because the arbitrator has found the claimant non-credible. Right. And, by the way, indicates, not hiding anything, that the petitioner made low back complaints to Gerson during therapy. Right. And then listen to what the arbitrator says. The arbitrator says, quote, clearly a reference to the low back. And pain complaints that are not corroborated by the medical records. Clearly that's a reference to the low back condition. Expounding incredibly that he's adding body parts. He didn't add a body part. And that was in the incident section that the arbitrator said that. So what the arbitrator is saying, he's not credible because now he's trying to say he hurt his low back, too, and it's just not, there's no support there. And that's why I'm saying it poisoned the entire analysis of this case by allowing accident to be placed into dispute. Counsel, I'm going to go back to the accident section on the arbitrator's brief and show you exactly why your analysis is wrong. The first sentence says, the parties do not dispute whether petitioner sustained an accident to the neck on April the 23rd, 2012. But respondent disputes whether the petitioner sustained a compensable injury to his low back. The arbitrator finds that petitioner did not sustain an accident resulting in an injury to his low back that arose out of in the course of employment. He's not saying he didn't have an accident. He's saying he didn't have an accident that resulted in an injury. That's causation. I think the other way to look at that is with the arbitrator saying he did have an accident with respect to his neck. He did not have an accident with respect to his low back. But that's not what the arbitrator wrote. The arbitrator wrote, did not sustain an accident resulting in an injury to the low back. When you say resulting in an injury, that's causation. Right. But why are we talking about the low back at that point anyway under an accident analysis? It's being analyzed under accident. Okay. Counsel, you're way off. Let me move on to manifestation. You're totally causation and it's manifestation. Go ahead. With respect to the manifest weight issue of the evidence, the petitioner was treating with Dr. Gresham who recommended cervical injections. The respondent decided instead to send him for an IV to Dr. Selby. Dr. Selby said he doesn't need epidural injections. He needs three to four weeks of work conditioning. Then he'll probably be at MMI. He goes back to Dr. Gresham. Dr. Gresham says, I don't agree that that's what he needs, but I'm going to agree to put him into work conditioning. Four weeks of work conditioning. He starts at the light level. His job is at the heavy level. He worsens to the sedentary level. He has an FCE the day after the last day of work conditioning that Dr. Selby had recommended and Dr. Gresham agreed to go along with. The valid FCE found him to be at the sedentary level versus the heavy level of his job. He's then cut off TTD benefits in January, which is about three weeks later. There's no opinion from Dr. Selby conjectured that he would be back to MMI. That's not a valid basis to cut off TTD and that should warrant penalties at least under Section 19L, if not under 19K. But Dr. Selby does finally see him then in April of 2013, which is about four months later after the FCE, and what does Dr. Selby say? I don't care if it's a valid FCE. I don't believe it. I'm disheartened. Well, let's not. Let's not just. Counsel, your time has expired. Thank you. Thank you. Counsel, you may respond. May it please the Court? My name is Stacey Hill. I represent the employer in this case. The issue in this case is whether the commission's decision is against the manifest weight of the evidence, and in this case the commission's decision is not against the manifest weight of the evidence. In terms of the claimant's credibility, the findings should not be overturned unless there is a clearly evident, plain, and indisputable opposite conclusion. It is not against the manifest weight of the evidence if no rational trier of fact could have agreed with the commission's findings. I ask you to turn your attention to the last time you experienced pain that you may have categorized as an 8 or a 9 out of 10. And perhaps if you are lucky enough to have never experienced that level of pain, to maybe just remember the last time that you stubbed your toe. And what was the expression on your face? And did you make any noise? And did you grab your foot or at least try to grab your foot? I think that stubbing your toe is not a 9 out of 10 pain, but certainly had I stubbed my toe on my way up here, all of you would have known. Mr. Ortiz categorized his pain on the day of surveillance as ranging between an 8 and a 9 out of 10. And on that day, video shows him walking very fluidly with no apparent signs of distress, turning his injured neck back and forth in conversation with his brother with no grimacing, lowering his big 6'2 frame into a little car where he had to bend his neck and bend his body, and he did it gracefully. And that is not representative of somebody who is experiencing pain that is an 8 or a 9 out of 10. And perhaps maybe if he was a gentleman who had a flat affect, that may be representative of somebody who is experiencing 8 to 9 out of 10 pain. However, the functional capacity evaluation is also documented evidence of a bad day, that the claimant testified was similar to the day that the surveillance was taken. And throughout the functional capacity evaluation, we have very dramatic complaints of pain. He had to discontinue certain portions of the test because his back was killing him. Facial grimacing is documented throughout the entire report. He took slow, labored steps when he was merely walking during the exam. That is not the behavior of a gentleman with a flat affect. I think the difference between the bad day of the functional capacity evaluation and the bad day where video was taken as when the functional capacity evaluation was occurring, he was aware that he was being observed. And after the independent medical examination, he was not aware that he was being observed. So in other words, you're suggesting there's evidence of symptom magnification. Yes. And that in and of itself would be enough for the commission to find that the claimant was not credible. However, throughout the record, there are several more contradictions that would support their findings on credibility. And today, I wanted to highlight that. In addition, his description of the accident got increasingly dramatic over time. When he testified, he said that he hit the back of his neck, between his neck and his shoulder, and then he fell to the ground, where he remained on the ground for 5 to 10 minutes, shocked and feeling dizzy. And so dizzy, in fact, that he had to crawl onto his equipment cart, where then he crawled up onto his cart and he sat again for another 5 to 10 minutes trying to regain his bearings. This is in direct contradiction to the hospital records that are very close in time to the accident, where he denied any dizziness and there's no mention of falling. Arbitrator Flores was in a unique position to observe the claimant throughout the entire day. She was able to see his eye contact, his body language, his tone of voice, his pace of speaking. And those are all major components of communication that go into a credibility finding that are not contained within the record. Arbitrator Flores provided a very detailed analysis as to why she found the claimant not credible, and presumably for the benefit of the reviewing bodies that weren't able to personally observe the claimant on the day of trial. Furthermore, the Commission's finding that his condition was no longer positively related after December 2012 is not against the manifest rate of the evidence. They based their decisions in line with Dr. Zelbe, who is a board-certified neurosurgeon, who opined that his complaints were medically inexplicable and non-anatomic. His own treating physician, Dr. Gration, agreed that his subjective complaints were not supported by any objective findings. His recommendations for additional treatment were based solely on his subjective complaints. Both doctors agreed that the MRI did not show any change in his condition. Both doctors agreed that the MRI did not show any findings that correlated with his subjective complaints. Both doctors agreed that he did not have a neurologic condition. Almost all of their testimony is corroborative. It was reasonable for the Commission to place more weight on the objective medical evidence, especially in light of the claimant's credibility. The work conditioning records are not supported by any of the objective medical evidence. But again, the issue of causation is whether it was against the manifest rate of the evidence, and there was ample evidence to support the Commission's findings, and therefore their findings on causation should be affirmed. Can I ask you a question? You say in your brief here that you're a cross-appellant. Where did you appeal from? From, well, the Commission didn't make any findings on the issue that I raised. Let me put it this way. Can you appeal from the decision you want? I'm sorry, I didn't hear you. You can't appeal from a decision you win, can you? You can argue those grounds as a basis for the affirmance of the decision below, but you cannot cross-appeal from a decision you win. It's just not possible. So I don't know why you even filed a cross-appeal, other than the fact that you generated extra briefing for both parties when you did it. What you're saying here, I think, is that Garrison's opinions should not have been admitted into evidence, and they were the opinions that supported or support your opponent's position. That's okay to argue that, because that's arguing for the affirmance of what the Commission did, because they rejected Garrison's opinions. You're using that as another basis. You can do that. But I don't think you can cross-appeal from it. And I really don't think that someone's treating physician becomes an adverse witness merely because they met with their patient's lawyer. I don't think there's a case that stands for that proposition at all. He's not an adverse witness, and he's not a person for whose immediate benefit the action is prosecuted. You suggest that merely because the Commission is going to award him medical bills, that somehow that makes him a person for whose immediate benefit the action is prosecuted. He is entitled to payment from his patient. The patient is entitled to reimbursement from you. So I don't see the argument that he's an adverse witness. But it really doesn't make any difference, because you're arguing that his opinions regarding causation weren't admissible because they were beyond the scope of his direct examination. That is a legitimate argument if the objection was made below. But it's an argument for affirmance. It's not a basis for cross-appeal. So, okay, go ahead. Your time is up. Thank you. Getting back to the issue of manifest weight, as I had indicated, the petitioner deteriorated from a level of being at the light level to the sedentary level by December 5th of 2012. He had an FCD on December 6th, finding him to be at the sedentary level, and it was a valid study. He then had a second MRI done about 11 days later on March 19th at Northwestern Memorial Hospital. The consulate indicated there was no change between the MRIs, and both doctors agreed, but that is not the case. In the first MRI, the petitioner had findings at the C5-C6 level, which were abnormal. On the second MRI, following this period of time during work hard and worse condition got worse, there were abnormal findings not only at C5-6, but similar findings at C6-7 and C7-T1. So there was a progression of his condition from the first MRI to the second MRI. So the commission's finding was that the petitioner's TTD should terminate as of December 5th, 2012. The issue with TTD is whether his condition stabilized. You can't say that the condition stabilized when the condition is in the process of deteriorating. They based their opinion on Dr. Zellbe. So the issue is, was there any evidence to support what Dr. Zellbe said? Well, Dr. Zellbe gave the opinions, but were his opinions based upon credible medical evidence? Dr. Zellbe said that the cervical MRIs were normal. If the commission's given a basis decision on that opinion, that opinion was incorrect. They were not normal. Dr. Zellbe also said that the FCE from ATI was not a valid representation of the petitioner's physical abilities. But clearly it was. They did validity testing in the FCE, and it was determined to be a valid test. They took his pulse. They did other measurements. They had to stop several activities short. And at some point during work conditioning, the therapist even stopped work conditioning and decided only to do stimulation and massage because he was going downhill so quickly. In his first report, Dr. Zellbe said that the petitioner's medical treatment was prolonged and protracted, but then he recommended more treatment of the exact same nature from therapy to work conditioning. He found no significance in the fact that the petitioner had a 50% improvement with trigger point injections, but that was what the recommendation was for moving from the trigger point to the cervical epidural injections because the trigger points were 50% effective. Most importantly, Dr. Zellbe said he based his recommendation for three or four weeks of work conditioning on several things, in part on his findings on examining the petitioner's symptoms. And he also testified that the two exams of the petitioner were identical. That's his word. The two exams of the petitioner were identical. So upon one examination, he finds that it's causally related. He's not at MMI and needs four weeks of work conditioning. And the second exam, it's identical, and yet he releases him to full-duty work. That is clearly against the manifest way to the evidence, especially in light of an FCE showing that he's gone from the light level down to the sedentary level. He also testified that the petitioner's increase in symptoms in work hardening would have no influence on him on whether the petitioner reached MMI or whether or not he could go back to full duty. If not that, then what? A video showing him walking from a car for about a minute, getting out of the car and walking into a 7-Eleven and walking back in? That's not a medical basis. Even from a manifest way basis, the commission's decision, finding that his cervical condition was not causally related and terminating TTD benefits is against the manifest way to the evidence. And consistent with the release that I outlined in my brief, I would ask for a reversal of that decision, an award of temporary total disability benefits, a prospect of medical care in the form of the injections. In the award of Dr. Gresham's medical bill, which was denied, and also in penalties and maternity fees consistent with what I had previously asked in light of the fact that the benefits were terminated four months before the second Dr. Zelby exam. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments. This matter will be taken under advisement. This position shall issue.